UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



IGNATIUS MANNING,

   Plaintiff,

  v.

ERHARDT + LEIMER, INC. and
ERHARDT + LEIMER GMBH,

   Defendants.

17-CV-348
DECISION & ORDER

   On April 24, 2017, the plaintiff, Ignatius Manning, commenced this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290-301. Docket Item 1. On June 30, 2017, this Court referred this case to United States Magistrate Judge Hugh B. Scott for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Docket Item 5. On January 3, 2018, defendant Erhardt + Leimer GmBH ("E + L GmBH") moved to dismiss for lack of subject matter jurisdiction or, in the alternative, lack of personal jurisdiction, Docket Item 21; on January 25, 2018, Manning responded, Docket Item 29; and on February 1, 2018, E + L GmBH replied, Docket Item 30. On April 20, 2018, Judge Scott issued a Report and Recommendation ("R&R") finding that E + L GmBH's motion should be granted on both jurisdictional grounds. Docket Item 32.

   On May 4, 2018, Manning objected to the R&R for thirteen separate reasons. Docket Item 33. On May 29, 2018, E + L GmBH responded to the objections. Docket Item 36. And on June 12, 2018, Manning replied. Docket Item 37.

A district court may accept, reject, or modify the findings or recommendations of

a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  A district court

must conduct a *de novo* review of those portions of a magistrate judge's

recommendation to which objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, the record in this

case, the objection and response, and the materials submitted by the parties.  For the

following reasons, the Court respectfully declines to adopt Judge Scott's

recommendation to grant E + L GmBH's motion.

## DISCUSSION

The Court assumes the reader's familiarity with the facts alleged in the complaint,

*see* Docket Item 1, and Judge Scott's analysis in the R&R, *see* Docket Item 23.

## I.     PLEADING STANDARD

E + L GmBH moved to dismiss on the grounds that, as a foreign corporation, it is

not covered by the ADEA.  Manning first objects to Judge Scott's applying the Rule

12(b)(1) standard, rather than the Rule 12(b)(6) standard, in deciding that motion.

Application of the allegedly incorrect standard prejudiced him, he argues, because a

court "'can refer to evidence outside the pleadings' when resolving a motion to dismiss

under . . . [Rule] 12(b)(1)," *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 441

(2d Cir. 2019) (quoting *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002))—as Judge

Scott indeed did here—but the same is not true of a Rule 12(b)(6) motion.  Rather, "[i]If,

on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to

2

and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 [and a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

### A.    Scope of Section 623(h)(2) of the ADEA

Section 623(h)(2) of the ADEA provides that the statute "shall not apply where the employer is a foreign person not controlled by an American employer." The Second Circuit addressed that language in *Morelli v. Cedel*, 141 F.3d 39 (2d Cir. 1998). The court observed that "[a]n absolutely literal reading of [the statute] might suggest that the ADEA . . . does not apply to the *domestic* operations of foreign employers—unless there is an American employer behind the scenes." *Id.* at 42 (emphasis in original). But the court then noted that such a reading would be "inconsistent with Congress' clearly expressed legislative purpose" in enacting that section—namely, to "limit the reach of a [separate] extraterritorial amendment adopted as part of the same legislation." *Id.* So the court looked beyond the statutory text to determine whether the ADEA covered the domestic operations of foreign employers. And the court concluded that it did.

The court was persuaded by the fact that that the Americans with Disabilities Act of 1990 and Title VII of the Civil Rights Act of 1964 covered a foreign employer's domestic operations, and it observed that no international comity principles suggested the ADEA should be interpreted otherwise. In light of these considerations, as well as the general imperative to construe civil rights legislation "liberally to achieve its [remedial and humanitarian] purpose," the Second Circuit "agree[d] with the [Equal Employment Opportunity Commission], the agency charged with the enforcement of the ADEA, that the law generally applies to foreign firms operating on U.S. soil." *Id.* at 43,

3

44 (citations omitted).  For that reason, the court found a foreign bank that had hired the plaintiff "to work in its New York office" subject to the ADEA.  *Id.* at 41, 44.

With *Morelli* as the backdrop, Manning's objection raises two issues for this Court.  First, the Court must decide whether the scope of section 623(h)(2) is a jurisdictional question or, instead, a question going to the merits of Manning's claims.  Second, the Court must decide whether *Morelli* compels it—or, at the very least, persuades it—to find that E + L GmBH can be held liable under the ADEA.

### B.    12(b)(1) or 12(b)(6)

As to the first question, this Court agrees with Manning that whether E + L GmBH can be held liable under the ADEA is an issue that implicates the merits.  Therefore, that issue should be analyzed not under Rule 12(b)(1) of the Federal Rules of Civil Procedure (that is, as a motion to dismiss for lack of subject matter jurisdiction) but instead under Rule 12(b)(6) (that is, as a motion to dismiss for failure to state a claim upon which relief may be granted).

Although the *Morelli* court analyzed the scope of the ADEA as a jurisdictional issue, that framing was not determinative to its holding and thus is mere dicta.[1] Moreover, since *Morelli* was decided, the Supreme Court has "tried . . . to bring some discipline to the use of the term jurisdiction."  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568

---

[1]  *See also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) ("[J]udicial opinions . . . [that] obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim[,] . . . should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit." (citations omitted)).

U.S. 145, 153 (2013) (citation omitted). Indeed, it has done so on facts analogous to those presented here.

In *Arbaugh v. Y & H Corporation*, the Supreme Court held that the "employee-numerosity requirement" of Title VII, found within the "definitions" section of that act and limiting Title VII's coverage to only those employers with fifteen or more employees, was "simply an element of a plaintiff's claim for relief." *See* 546 U.S. 500, 509, 516 (2006). The Court explained that, "[o]f course, Congress could make the employee-numerosity requirement 'jurisdictional,' just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332."[2] *Id.* at 514-15. But it had not done so. *Id.* ("[N]either [28 U.S.C.] § 1331, nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3) (authorizing jurisdiction over actions 'brought under' Title VII), specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor."). "Instead, the 15-employee threshold appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).

Like the numerosity requirement of Title VII, the scope of the ADEA is a definitional question. As the *Morelli* court explained, section 623(h)(2) was added to the ADEA in 1984 "to limit the reach of . . . extraterritorial amendment[s] adopted as part of

---

[2] *See also Sebelius*, 568 U.S. at 153 ("To ward off profligate use of the term 'jurisdiction,' we have adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional. We inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'" (alteration in original) (quoting *Arbaugh,* 546 U.S. at 515-16)).

the same legislation . . . [that] amplified the *definition* of 'employee' in [section] 11(f) of

the ADEA" to include "any individual who is a citizen of the United States employed by

an employer in a workplace in a foreign country." 141 F.3d at 42 (emphasis added)

(citations omitted); *see also id.* at 43 ("[Section 623(h)(2)] merely limits the scope of the

amended *definition of employee*, so that an employee at a workplace in a foreign

country is not protected under the ADEA if the employer is a foreign person not

controlled by an American employer." (emphasis added)).  In other words, section

623(h)(2) effectively defines the term "employer" and, like the definition of "employee" in

Title VII, the definition here is "simply an element of a plaintiff's claim for relief."  *See*

*Arbaugh*, 546 U.S. at 509; *see also Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 520

n.2 (S.D.N.Y. 2017) (positing that although "the distinction [was] immaterial" to

resolution of the case before it, "the question of whether [s]ection 623(h)(2) bar[s] suit

[against the foreign parent company of a wholly-owned domestic subsidiary which

employed the plaintiff] . . . is almost certainly a merits one, not a jurisdictional one"); *cf.*

*Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 869 (7th Cir. 2011) (holding that although

"[a]n employee's status as a foreign worker may prevent her success on the merits in a

Title VII or ADEA case, . . . it is not a barrier to the court's power to adjudicate her case"

because that issue "goes to the merits of a claim rather than the court's subject matter

jurisdiction").

Because the ADEA does not otherwise prescribe a federal court's jurisdiction

over claims brought under its provisions, this Court has jurisdiction under the general

authority of 28 U.S.C. § 1331 to adjudicate any "colorable claim 'arising under' the

Constitution or laws of the United States."  *See Arbaugh*, 546 U.S. at 513 (quoting 28

U.S.C. § 1331).  And whether E + L GmBH is an employer covered by the ADEA is a question going to the merits of Manning's claim that appropriately is analyzed under Rule 12(b)(6).  This Court defers addressing the merits of E + L GmBH's arguments concerning the scope of the ADEA until after it addresses E + L GmBH's motion to dismiss for lack of personal jurisdiction.  *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d. Cir. 1963) (*en banc*) (holding that when a court is presented with motions to dismiss for lack of personal jurisdiction and for failure to state a claim, the court should resolve the jurisdictional issue first because "a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim").

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A defendant may challenge a plaintiff's assertion that a court has personal jurisdiction over the defendant in one of three ways:

> (1) by a Rule 12(b)(2) motion [to dismiss], which assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency, (2) by a Rule 56 motion [for summary judgment], which asserts that there are undisputed facts demonstrating the absence of jurisdiction, or (3) by a request for an adjudication of disputed jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits.

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  "If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation[s], in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction."  *Id.* (quoting *Ball*, 902 F.2d at 197).  Although the court need not credit "conclusory[,] non-fact-specific jurisdictional allegations," *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998), it must "construe the pleadings and affidavits in

7

the light most favorable to [the] plaintiff[ ], resolving all doubts in [his] favor," *id.* (quoting *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). *See generally Dorchester*, 722 F.3d at 86 (rejecting "the principle" that on a Rule 12(b)(2) motion, "where a defendant rebuts a plaintiff's unsupported allegations with direct, highly specific testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted" (citation omitted)); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (noting that, until an evidentiary hearing is held, "a *prima facie* showing suffices, *notwithstanding any controverting presentation by the moving party,* to defeat the motion" (emphasis added)).

Here, E + L GmBH moved to dismiss under Rule 12(b)(2) and has not asked for an evidentiary hearing. *See* Docket Item 21. The issue therefore is whether Manning has made a *prima facie* showing that this Court has jurisdiction over E + L GmBH. "'To determine personal jurisdiction over a non-domiciliary in a case involving a federal question,' [courts] first 'apply the forum state's long-arm statute.'" *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "If the long-arm statute permits personal jurisdiction, [the court] analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution." *Id.* (citing *Chloé*, 616 F.3d at 164).

### A.    New York Long-Arm Jurisdiction over E + L GmBH

Manning claims that this Court has jurisdiction under either of two provisions of New York's long-arm statute: the "transact[ing] any business" provision and the "tortious

8

act" provision. *See* N.Y. C.P.L.R. 302(a)(1) and (3). More specifically, he argues that this Court has jurisdiction over E + L GmBH not because of any actions it undertook directly but because of actions undertaken by Erhardt + Leimer, Inc. ("E + L USA"), its wholly-owned domestic subsidiary.

Because it is undisputed that E + L USA transacts business in New York, *see* Docket Item 4 at 2 (Answer), the principal disputes are (i) whether E + L USA is an "agent" or "mere department" of E + L GmBH and, if so, (ii) whether the events giving rise to Manning's claim—that is, his termination—are substantially related to E + L USA's business activities in New York. The Court addresses each issue in turn.

### 1.   Domestic Subsidiary Jurisdiction

For New York courts to have personal jurisdiction over a foreign parent company based on the actions of its domestic subsidiary, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Jazini*, 148 F.3d at 184 (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)); *see also Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989) ("Under New York law, where a corporate subsidiary is essentially a 'separately incorporated department or instrumentality' of a foreign corporation, the activities of the subsidiary will be attributed to the foreign parent for purposes of determining the parent's amenability to personal jurisdiction in New York." (quoting *TACA Int'l Airlines, S.A. v. Rolls Royce, Ltd.*, 15 N.Y.2d 97, 99, 102 (1965)).

"To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" *Jazini*, 148 F.3d at 184 (alteration in original) (quoting

*Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537 (1967)); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) ("To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state 'for the benefit of, and with the knowledge and consent of[,]' the non-resident principal." (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) (additional citations omitted)); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (holding that to establish jurisdiction under section 302(a)(1), the plaintiff was not required to "establish a formal agency relationship between [the foreign] defendants and [the alleged agent]"; instead, the plaintiff needed only to "convince the court that [the alleged agent] engaged in purposeful activities in [New York] in relation to his transaction for the benefit of and with the knowledge and consent of the [foreign] defendants and that they exercised some control over [the alleged agent] in the matter" (citations omitted)).

To determine whether a subsidiary is a "mere department" of the parent, courts consider four factors:

> [(1)] "common ownership"—which is "essential"—; [(2)] "financial dependency of the subsidiary on the parent corporation;" [(3)] "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and [(4)] "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."

*Jazini*, 148 F.3d at 185 (quoting *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 121, 122 (2d Cir. 1984)).

Here, Manning alleges that E + L USA and E + L GmBH "are an integrated business enterprise with common executive managers, human resources, and administrative services . . . [and] hold themselves out to the public and have co-branded themselves as 'ERHARDT + LEIMER.'" Docket Item 1 at 2 (Complaint). As evidence,

he submitted screenshots of E + L GmBH's website as well as a declaration concerning his employment.  The website states that E + L GmBH has "almost 1,600 employees in 15 countries," "19 subsidiaries in Europe, Asia and America," and "115 trade representatives around the world."  *See* Docket Item 29-1 at 3, 9.  One such subsidiary is E + L USA, which is referred to as a "branch office[ ]" of E + L GmBH.  *Id.* at 12, 14.  E + L GmBH is "represented on the American Market through . . . [E + L USA]."  *Id.* at 29.  For its part, E + L USA uses its website to list its headquarters as E + L GmBH's address in Germany.  *See id.* at 43.

With respect to the events at issue here, Manning avers that in 1996, when he was still employed by E + L Canada, "the President of [E + L USA] (David Merrit) and the management team of [E + L GmBH] in Germany asked [him] to transfer [his] employment to [E + L USA] because . . . [E + L GmBH] was reducing the size and scope of the Canadian subsidiary."  Docket Item 29-2 at 2.  Manning accepted the transfer and relocated to New York but "was forced to leave the position later [that year] because [he] was required to relocate to South Carolina which [he] could not do due to family reasons."  *Id.* at 3.  "In December 2011, [Manning] was recruited to return to work at [E + L USA]."  *Id.*  As part of the recruitment process, Manning "was interviewed by Harmut Boessmann, the Chief Sales Officer of [E + L GmBH].  After receiving approval . . . from Mr. Boessmann, [E + L USA] hired [Manning] as [a sales representative]."  *Id.*  Manning was then "sent to [E + L GmBH] in Germany for training."  *Id.*  After he finished training, Manning worked for E + L USA exclusively from his home office in New York.  *Id.*  During his employment, Manning "had frequent contact—at least weekly—with Mr. Boessmann . . . either by e-mail, telephone or both."  *Id.*

In 2014, Mr. Boessmann "announced that Maulik Desai was being transferred from the Erhardt + Leimer facility in India . . . to [E + L USA]." *Id.* "At the time of the transfer . . . , Vice President of Sales and Operations of [E + L USA], Todd Guzzardo, told [Manning] that although he was aware that Mr. Boessmann was transferring [Desai] . . . , he did not know how the transfer would affect [Manning's] job or his position." *Id.* at 4. After the transfer, however, eighty percent of Manning's sales territory was reassigned to Desai, and Manning was given a less-lucrative sales position and territory. *Id.* And "[b]y letter dated June 4, 2015 sent to [Manning's] office [in New York], ERHARDT + LEIMER terminated [Manning's] employment effective June 5, 2015." Docket Item 1 at 5.

Manning has adequately alleged that E + L USA "is essentially a 'separately incorporated department or instrumentality'" of E + L GmBH. *See Canterbury Belts Ltd.*, 869 F.2d at 40 (quoting *TACA Int'l Airlines, S.A.*, 15 N.Y.2d at 99, 102).

First, Manning has sufficiently pleaded the "essential" first factor of "common ownership." *See Jazini*, 148 F.3d at 185 (citation omitted). E + L USA is the wholly-owned subsidiary of E + L GmBH. Docket item 4 at 2.

Likewise, Manning has adequately alleged the third factor: that E + L GmBH significantly "interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities." *See Jazini*, 148 F.3d at 185 (citation omitted). He alleges that E + L GmBH was the driving force behind his 1996 relocation, his 2011 recruitment and hiring, his 2014 reassignment, and his 2015 termination. *See* Docket Item 29-2 at 2-4. Indeed, with respect to his 2014 reassignment, he claims that E+ L GmBH acted unilaterally and without input from E + L

USA. *See id.* at 3-4.  And he claims that E + L USA and E + L GmBH have "common executive managers, human resources, and administrative services."  *See* Docket Item 1 at 2.  Standing alone, this final claim might be conclusory.  But when viewed alongside Manning's allegations about the direct involvement of E + L GmBH's Chief Sales Officer in his hiring and reassignment at E + L USA, it suffices to demonstrate that E + L GmBH "fails to observe corporate formalities" with respect to E + L USA.

Manning also has alleged facts sufficient to support the fourth factor: "control over the marketing and operational policies of the subsidiary exercised by the parent." *Jazini*, 148 F.3d at 185 (citation omitted).  E + L GmBH's website describes E + L USA's office as a "branch office[ ]" of E + L GmBH and explains that E + L GmBH is "represented on the American Market through . . . [E + L USA]."  Docket Item 29-1 at 12, 14, 29.  E + L USA's website lists its headquarters as E + L GmBH's address in Germany. *See id.* at 43.  And Manning alleges that E + L GmBH oversaw his training in 2011.  Docket Item 29-2 at 3.  Those allegations are sufficient to establish the parent's control over its subsidiary's operations. *Cf. Volkswagenwerk*, 751 F.2d at 122 (explaining that the following activities satisfy this factor: "parent's letterhead listed subsidiary as a branch"; "parent's letterhead, general advertising, and reports to stockholders identified subsidiary as branch; subsidiary's documents were standard forms prepared by parent"; "parent trained subsidiary's personnel, determined policy, prepared marketing material, set prices, and issued warranties" (citations omitted)).

Although Manning has not alleged facts supporting the second factor—E + L USA's "financial dependency" on E + L GmBH—the Court finds that Manning's allegations and evidence with respect to the other three factors suffice, at least at this

13

early stage, to find that E + L USA is a "mere department" of E + L GmBH.  *See, e.g.,*

*Salemi v. Boccador, Inc.*, 2004 WL 943869, at *3 (S.D.N.Y. Apr. 29, 2004) (denying

motion to dismiss under Rule 12(B)(2), despite finding doubt as to the financial

dependence factor, because the plaintiff had met its burden with respect to the

"essential factor" of common ownership and two of the three other "important" factors).

In short, Manning has adequately pleaded that E + L USA is E + L GmBH's

"mere department."  "[T]he activities of [E + L USA] [therefore] will be attributed to [E + L

GmBH] for purposes of determining [E + L GmBH's] amenability to personal jurisdiction

in New York."  *See Canterbury Belts Ltd.*, 869 F.2d at 40.  And so the Court now turns

to the question of whether Manning has alleged satisfactorily that E + L USA is subject

to New York's long-arm statute.  It begins with the transacting business prong, section

302(a)(1), and, finding its requirements satisfied, does not address the tortious conduct

prong, section 302(a)(3).

### 2.    Section 302(a)(1) Long-Arm Jurisdiction

Under section 302(a)(1), a court may exercise jurisdiction over a non-domiciliary

that "transacts any business within the state or contracts anywhere to supply goods or

services in the state."  To establish jurisdiction under section 302(a)(1), "two

requirements must be met: (1) The defendant must have transacted business within the

state; and (2) the claim asserted must arise from that business activity."  *Eades*, 799

F.3d at 168 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161,

168 (2d Cir. 2013)).

"[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even

though the defendant never enters New York, so long as the defendant's activities here

were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Id.* (alteration in original) (quoting *Chloé*, 616 F.3d at 170); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) ("[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." (citation omitted)).   "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Id.* (quoting *Fischbarg v. Doucet,* 9 N.Y.3d 375, 380 (2007)); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) ("A connection that is 'merely coincidental' is insufficient to support jurisdiction." (quoting *Johnson v. Ward,* 4 N.Y.3d 516, 520 (2005))).

Here, E + L USA admits that is has "transacted business" in New York.  *See* Docket Item 4 at 2.  The dispute centers on whether Manning's claims "arise from" those same business transactions.

In the context of an action between an employee and his employer, the plaintiff's employment within the forum state is sufficient to show that the defendant employer transacted business within that state.  And when the alleged injury is discrimination in the course of that employment, the plaintiff has adequately alleged a "substantial relationship between the transaction and the claim asserted."  *See Eades*, 799 F.3d at 168 (citation omitted).[3]  Manning's allegations that he was employed by E + L USA

---

[3] *See, e.g.*, *Vodopia v. Koninklijke Philips Elecs., N.V.*, 398 Fed. App'x 659, 661 (2d Cir. 2010) (summary order) (determining that, in a case alleging unlawful retaliation under the Sarbanes-Oxley Act, the plaintiff's allegations established jurisdiction under

within New York and that E + L USA unlawfully discriminated against him during that

employment therefore suffice, at this early stage, to establish this Court's jurisdiction

over E + L USA under section 302(a)(1).

---

section 302 because he claimed that the suit "[arose] from [the foreign defendant's] transact[ion] of business within the state—specifically, its employment of [the] plaintiff" in New York (citations omitted)), *abrogated on other grounds by Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221-22 (2d Cir. 2014); *Williams v. PMA Cos., Inc.*, 2019 WL 6311060, at *10 (N.D.N.Y. Nov. 25, 2019) (finding that the plaintiff had sufficiently alleged that her claim arose from the defendant's business transactions in New York— the plaintiff's own employment in New York—by claiming that the foreign parent corporation "was involved in [its subsidiary's] decisions to refuse [the p]laintiff's request to work remotely and to terminate [the p]laintiff's employment" (citations omitted)); *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 260-61 (W.D.N.Y. 2018) (denying the foreign defendant's motion to dismiss for lack of jurisdiction because the defendant "reached into New York to create and maintain an ongoing employment relationship with [the p]laintiff, and [the p]laintiff's claims" that the defendants discriminated against her and ultimately retaliated against her for complaining about that discrimination "emerged from that [employment] relationship"); *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271-72 (E.D.N.Y. 2015) (denying the defendant's motion to dismiss for lack of jurisdiction because "[the p]laintiff's decision to work from home . . . was not unilateral. [The d]efendants hired her knowing that she would live and work in [New York], and 'continued their communications with [the] plaintiff [t]here' for a sustained period of time, thereby engaging in the kind of 'independent activities' in the state that render long-arm jurisdiction appropriate." (quoting *Fischbarg*, 9 N.Y.3d at 382-83)); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 358-59 (S.D.N.Y. 2007) (denying the defendant's motion to dismiss for lack of jurisdiction where the plaintiff worked from her home in New York because "[w]hile she was employed by [the foreign defendant corporation], . . . work assignments that [the p]laintiff claim[ed] constituted instances of illegal disparate treatment were communicated and assigned to [her] by [the individual defendants] via telephone, email, and fax to her home office in New York [and d]iscussions concerning her complaints about her work assignments took place through the same channels"); *cf. Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 106-07 (E.D.N.Y. 2005) (rejecting the defendants' argument that "their alleged discriminatory conduct [did] not fall within the reach of [the NYHRL] because to the extent it affected [the p]laintiff's employment in New York, it did so at her *home* where she worked, as opposed to an office in the traditional sense where [the p]laintiff had to interact with other employees"; "a plaintiff need not allege that the discrimination originated in New York if she alleges . . . that the discriminatory practice affected the conditions of her employment in New York" (alteration in original) (citation omitted)).

What is more, assuming the truth of Manning's allegations—as the Court must at this stage—E + L GmBH can hardly be heard to complain about being unaware that it could be haled into court in New York. Knowing that Manning was unwilling to relocate from his home in in New York to the firm's South Carolina branch office, E + L GmBH nevertheless chose to "recruit[ ]" him to fill a vacancy. Docket Item 29-2 at 3. And it then chose to allow him to work from his home in New York for three-and-a-half years, during which time the firm frequently sent communications into and out of the state— including the letter terminating Manning's employment. Under the circumstances that the plaintiff alleges, E + L USA's and E + L GmBH's presence in New York was thus "[p]urposeful" and "volitional"—that is, far from "merely coincidental." *Eades*, 799 F.3d at 168 (quoting *Fischbarg,* 9 N.Y.3d at 380); *Sole Resort*, 450 F.3d at 103 (quoting *Johnson,* 4 N.Y.3d at 520). These allegations are sufficient to demonstrate that Manning's claims arise from E + L USA's and E + L GmBH's business activities in New York.

Finally, E + L GmBH's evidence contradicting Manning's jurisdictional claims is not relevant at this stage in the proceeding. *See* Docket Item 21-1 (Guzzardo Declaration); Docket Item 21-2 (declaration of E + L GmBH's CFO, Tobias Merk). As the Second Circuit explained in *Dorchester*, even if "there is plainly reason to question the authenticity of the [plaintiff's evidence], . . . in the absence of an evidentiary hearing, it [is] error for [a] district court to resolve [a] factual dispute in [the defendant's] favor." 722 F.3d at 86 (citation omitted).

In short, Manning has adequately pleaded facts showing this Court's jurisdiction over E + L USA—and therefore E + L GmBH—under section 302(a)(1). The Court turns

next to the question of whether an exercise of long-arm jurisdiction is constitutionally appropriate.

### B.    Constitutional Jurisdiction over E + L GmBH

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *Eades*, 799 F.3d at 168-69 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)). In deciding whether a plaintiff has met its burden with respect to the first requirement, courts "evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." *Id.* at 169 (quoting *Licci*, 732 F.3d at 170). "[M]inimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Id.* (quoting *Licci*, 732 F.3d at 170)). And "[t]he commission of some single or occasional acts of the corporate agent in a state may sometimes be enough." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

If a court finds that the plaintiff has established minimum contacts, the burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Licci*, 732 F.3d at 173). These considerations include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (quoting *Chloé*, 616 F.3d at 164). "Ultimately, the exercise of personal jurisdiction is reasonable if it 'would comport with fair play and substantial justice.'" *Id.* (quoting *Licci,* 732 F.3d at 170).

The Second Circuit has noted that "despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, [it] would expect such cases to be rare." *Id.* at 168 (quoting *Licci,* 732 F.3d at 170); *see also Best Van Lines*, 490 F.3d at 246-47 ("With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' This 'purposeful[ ] avail[ment]' language defining 'transacting business' has been adopted by the New York Court of Appeals from Supreme Court cases analyzing the constitutional limitations on a state's power to assert personal jurisdiction over a non-domiciliary defendant." (alterations in original) (citations and footnote omitted) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382 (1967)). This case is not among those rare ones.

As discussed above, Manning has adequately alleged facts showing that E + L GmBH "purposefully availed itself of the privilege of doing business in [New York] and could foresee being haled into court there." *See Eades*, 799 F.3d at 169 (quoting *Licci*, 732 F.3d at 170). And while the Court is, of course, mindful that "litigation in a foreign jurisdiction is a burdensome inconvenience for any company," *Frummer*, 19 N.Y.2d at

538, it is not persuaded that exercising jurisdiction over E + L GmBH would be "unreasonable," *see Eades*, 799 F.3d at 169 (citation omitted).  Indeed, "where [a defendant's] activities abroad, either directly or through an agent, become . . . widespread and energetic," litigation abroad is "part of the price which may be properly demanded of those who extensively engage in international trade." *Frummer*, 19 N.Y.2d at 538.

In short, taking the plaintiff's allegations as true, and drawing all inferences in Manning's favor, this Court finds that Manning has made a *prima facie* showing of personal jurisdiction.  E + L GmBH's motion to dismiss under Rule 12(b)(2) is denied. E + L GmBH remains free to "challeng[e] the jurisdictional facts" in a motion for summary judgment under Rule 56 or at trial.[4]  *Dorchester*, 722 F.3d at 86 (citing *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58-59 (2d Cir. 1981)).  In either case, "[Manning] [then] would have to prove the facts supporting jurisdiction by a preponderance of the evidence." *Id.* at 86-87.

## III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As discussed in section I, *supra*, E + L GmBH also has moved to dismiss under Rule 12(b)(6), arguing that Manning has failed to state a claim upon which relief may be granted.  *See* Docket Item 21.  If, on a motion under Rule 12(b)(6), "matters outside the

---

[4] Although a defendant ordinarily also could request a hearing on the issue of jurisdiction, that option may not be available to E + L GmBH in this case because, as discussed below, the "jurisdictional dispute is interwoven with the underlying merits of [Manning's] suit." *See Dorchester*, 722 F.3d at 87.  Because "the overlap in the evidence is such that fact-finding on the jurisdictional issue [likely] will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury," resolution of these issues likely must be left to a motion for summary judgment or trial. *Id.* (quoting *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006)).

pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56," and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed.

R. Civ. P. 12(d). In other words,

> [o]nce [a court] [is] presented with matters outside the pleadings, Rule 12(b)
> afford[s] two options. The court [may] exclude[ ] the extrinsic
> documents. . . . [But if] it elect[s] not to do so, . . . the court [must] convert
> the motion to one for summary judgment and give the parties an opportunity
> to conduct appropriate discovery and submit the additional supporting
> material contemplated by Rule 56.

*Chambers*, 282 F.3d at 154 (citations omitted). "This conversion requirement is 'strictly

enforced.'" *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).

Before deciding whether to consider the extrinsic materials presented by E + L

GmBH in its motion to dismiss, the Court clarifies an antecedent question: the

applicability of the "integrated enterprise" doctrine.

## A.     The ADEA and the Integrated Enterprise Doctrine

"To prevail on an ADEA claim[,] . . . 'the plaintiff must first establish a *prima*

*facie* case by showing membership in a protected class, qualification for the position, an

adverse employment action, and circumstances that give at least minimal support to an

inference of discrimination.'" *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir.

2000) (quoting *Fagan v. N.Y. Elec. & Gas Corp.*, 186 F.3d 127, 132 & n.1 (2d Cir.

1999)), *abrogated on other grounds by Kessler v. Westchester Cty. Dep't of Soc. Svcs.*,

461 F.3d 199 (2d Cir. 2006). In *Brown v. Daiken America Inc.*, a case involving claims

under Title VII and the NYHRL, the Second Circuit explained that "[t]o prevail in an

employment action against a defendant who is not the plaintiff's direct employer, the

plaintiff must establish that the defendant is part of an 'integrated enterprise' with the

employer, thus making one liable for the illegal acts of the other." 756 F.3d 219, 226 (2d Cir. 2014) (quoting *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 341 (2d Cir. 2000)). "In essence, a court must consider whether 'an employee, formally employed by one entity, . . . has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity.'" *Id.* (alteration in original) (quoting *Arculeo v. On-Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005)).

The Court is unpersuaded by E + L GmBH's argument that a plaintiff may not rely on the integrated enterprise doctrine to bring a claim under the ADEA. E + L GmBH points to section 623(h)(2), which provides that the ADEA "shall not apply where the employer is a foreign person not controlled by an American employer." But the Second Circuit already has held that section 623(h)(2) does not exclude "the *domestic* operations of foreign employers." *Morelli,* 141 F.3d at 42 (emphasis in original). True, *Morelli* concerned a foreign employer's liability to its direct employee—not, as here, to an employee of a wholly-owned domestic subsidiary. But that distinction is immaterial. As Judge Furman of the United States District Court for the Southern District of New York has explained, "[i]f the single-employer doctrine applies in the case of a domestic subsidiary and a foreign parent, then the domestic employee of a wholly owned U.S. subsidiary is treated, constructively at least, as if he were the employee of the foreign parent—in which case, the situation is indistinguishable from the one in *Morelli.*" *Downey,* 238 F. Supp. 3d at 522-23 (collecting cases). That *Brown* involved claims under Title VII and the NYHRL—not, as here, the ADEA—does nothing to undercut this conclusion. "[T]he *Morelli* Court emphasized that Title VII and the ADEA should be

22

understood to have a similar substantive reach." *Id.* at 523 (citing *Morelli*, 141 F.3d at 43).

Manning therefore may rely on the integrated enterprise doctrine to demonstrate E + L GmBH's liability under the ADEA. Courts consider the following four factors to "determine when . . . a parent company . . . may be considered the employer of its subsidiary's employees": "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Brown*, 756 F.3d at 226 (second quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)). "Although no one factor is determinative[,] . . . control of labor relations is the central concern." *Id.* (second alteration in original) (quoting *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir. 1996)). A plaintiff "need not allege that the parent exercises 'total control or ultimate authority over hiring decisions,' so long as he alleges that there is 'an amount of participation [by the parent] that is sufficient and necessary to the total employment process.'" *Id.* (alteration in original) (quoting *Cook*, 69 F.3d at 1241).

### B.    E + L GmBH's Extrinsic Materials

The Second Circuit has cautioned that "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss.'" *Brown*, 756 F.3d at 226 (citations omitted). In light of that caution and for the reasons discussed above in the context of personal jurisdiction, this Court would find on the current record that "a reasonable jury could conclude that [E + L GmBH] exercised sufficient control over the terms and conditions of [Manning's] employment to qualify as his 'employer' for purposes of a

23

discrimination claim." *See id.* at 228 (quoting *Parker,* 204 F.3d at 341).  But the Court

also recognizes that E + L GmBH has submitted voluminous materials contradicting

Manning's assertions about the existence of an integrated enterprise, *see* Docket Items

21-1, 21-2, 30-1, 30-2, 30-3, 30-4, 30-5, and that, if those assertions are true, E + L

GmBH might avoid the considerable expense of defending itself abroad.  For that

reason, and in the interests of judicial economy, the Court will exercise its discretion to

convert E + L GmBH's motion to dismiss under Rule 12(b)(6) into a motion for summary

judgment under Rule 56.  The parties therefore must be given "an opportunity to

conduct appropriate discovery and submit the additional supporting material

contemplated by Rule 56."  See *Chambers*, 282 F.3d at 154 (citations omitted).

 The Court refers the matter back to Judge Scott for limited discovery on whether

E + L USA and E + L GmBH are, in fact, an "integrated enterprise" under the framework

summarized in *Brown*[5]; additional briefing as appropriate; and preparation of an R&R on

E + L GmBH's converted motion for summary judgment under Rule 56.

---

 [5] E + L GmBH also may contest the issue of personal jurisdiction.  To the extent
the question of whether E + L USA is a "mere department" of E + L GmBH is
"interwoven" with the question of whether E + L USA and E + L GmBH are an
"integrated enterprise," any overlapping factual determinations may not be resolved by
the court. *See Dorchester*, 722 F.3d at 87.  Instead, they must be reviewed under the
summary judgment standard. *Id.*

## CONCLUSION

For the reasons stated above, defendant E + L GmBH's motion to dismiss under Rule 12(b)(2), Docket Item 21, is DENIED, and E + L GmBH's motion to dismiss under Rule 12(b)(1), Docket Item 21, is construed as a motion to dismiss under Rule 12(b)(6) and converted to a motion for summary judgment under Rule 56. The case is referred back to Judge Scott for further proceedings consistent with this decision and order and the referral order of June 30, 2017, Docket Item 5.

SO ORDERED

Dated:      February ___, 2020
            Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

25